### S. C. CARSON *v.* A. ALEXANDER.

1. BILLS AND NOTES: PRINCIPAL AND AGENT: PRINCIPAL MAY PAY AS DRAWEE A BILL DRAWN ON HIS AGENT.—If the principal, upon the failure of the drawer to provide means to meet a bill drawn on and accepted by his agent, advance the amount thereof to the holder, he will be entitled to recover from the drawer the sum so advanced, without proof of protest, or notice of the dishonor of the bill.

2. SAME: A BILL CHARGED IN AN ACCOUNT RENDERED, AND NOT OBJECTED TO, RECOVERABLE WITHOUT NOTICE OR PROTEST.—Where a customer receives accounts from his merchant, in which there is charged an item for cash advanced to take up a bill drawn by the customer upon another, and makes no objection

thereto, he cannot afterwards object to want of protest and notice of the dishonor of the bill.

3. INTEREST : MAY BE COLLECTED ACCORDING TO THE COURSE OF TRADE BETWEEN THE PARTIES.—If a merchant, residing and doing business in this State, advance for a customer the amount of a bill drawn by the latter and payable in New Orleans, he will be entitled to interest according to the course of trade and the agreement between them in relation to their dealings with each other, although it exceed the legal rate of interest of Louisiana.

4. SAME.—An agreement to pay interest at the rate at which it is charged in accounts rendered and received without objection, will be presumed.

5. DEBTOR AND CREDITOR : PAYMENT.—Where a debtor draws a bill on his creditor, and procures the same to be discounted, and applies the net proceeds thus realized to the payment of his indebtedness, the creditor, if he accept and pay the bill out of his own funds, will be entitled to charge the debtor with the amount of the bill and the antecedent indebtedness, less the sum received by him from the discount of the bill.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

The appellant filed his bill in the Chancery Court against Alexander, and the trustee in a deed of trust executed by the complainant to secure his indebtedness to Alexander, for the purpose of obtaining an injunction against a sale by the trustee, and for a settlement of the accounts between Alexander and himself.

The bill charges that, from January, A.D. 1852, to the present time, the defendant, Alexander, was doing business as a commission merchant in the city of Vicksburg, and had made various advances to complainant (and which are specified), and that complainant had shipped his cotton to Alexander, who had sold the same through A. J. Wright & Co., of New Orleans. The bill states that Alexander now claimed a balance of about $1900, but that the complainant's payments are nearly equal to the advances, and that there is now very little, if any, balance due to Alexander.

In reference to the draft for $706 mentioned in the opinion of the court, the statement in the bill is, that the said bill was made and delivered to Alexander for no consideration whatever, but was made for the purpose of placing in a negotiable form a portion of the debt then due by complainant to Alexander, or which would be due after he should pay a draft drawn by complainant on him in

VOL. V.—34

favor of Hilzheim for $611 97, and that it is an improper charge against complainant; and in reference to this a discovery was asked.

On this point, the statement in the answer was, that Alexander had accepted the draft in favor of Hilzheim for $611 97, for the accommodation of the complainant, and that he failed to meet it at maturity, whereby Alexander was obliged to advance the amount thereof. That complainant afterwards, in order to reimburse Alexander for the sum so advanced, drew the said draft of $706 on Alexander, who accepted it, and that then the complainant procured the bill to be discounted by a banker for the sum of $642 46, of which sum he paid Alexander $542 46, and that when this last bill fell due Alexander paid 'that also. That in his accounts with complainant he had charged him with both drafts, and credited him with the sum of $542 46.

In relation to the draft for $1500 drawn by the complainant on A. J. Wright & Co., the facts appear to be as follows : Alexander being in advance to complainant, the latter, for the purpose of reimbursing Alexander, on the 20th of February, A.D. 1853, drew his bill on A. J. Wright & Co., of New Orleans, for $1500, due 20th of November, 1853. The bill was payable to the order of complainant, and it was by him indorsed, and accepted by the drawees. The draft was discounted for $1373 10, and that amount placed to the credit of the complainant. Upon the failure of the complainant to meet the bill at maturity, Alexander paid it.

The deposition of one Riley was taken on behalf of Alexander. This witness proves that he was the bookkeeper and cashier of Alexander at Vicksburg; that the business transactions between Alexander and Carson were conducted according to the custom among commission merchants at that place; that Carson was charged with interest at the rate of eight per cent. per annum, and credited with interest on his payments at the same rate, and that his accounts were rendered accordingly, without objection on his part. That he was also charged two and a half per cent. commissions for acceptances, and a like commission for advances when he failed to meet his bills, and that these charges were also contained in his accounts which were rendered to him, and that no objection was made thereto.

The accounts were referred to a commissioner, and upon the

Carson *v.* Alexander.

coming in of his report, several exceptions taken thereto were sustained, and he was ordered to amend it.   The commissioner was directed to calculate interest at six per cent. on all the items in the account for goods, wares, and merchandise, and at eight per cent. on the items for cash advanced.

To the amended report, the complainant, among other exceptions, filed the following :—

1. On the 20th of February, 1853, the commissioner has charged Carson with his (Carson's) draft on A. J. Wright & Co. for $1500, and accepted by them in favor of Alexander, without proof of demand, protest, or notice.

2. On the same bill he has charged interest at the rate of eight per cent., when, as the bill was payable in New Orleans, it bears only five per cent. interest.

3. On the 12th of July, 1852, he credits Carson by $542 46 and interest: the credit should be for $706, the amount of the draft and interest.

The chancellor overruled these exceptions, and dissolved the injunction as to the amount found due by the commissioner's report.

From this decree the complainant appealed.

*D. Shelton,* for appellant.

*W. T. Withers,* for appellee.

HANDY, J., delivered the opinion of the court.

The errors relied upon consist in exceptions taken by the appellant to an account taken by a commissioner under the direction of the Chancery Court.

The first error complained of is the disallowance of the third exception taken to the account.   By the account, the defendant is allowed the sum of $1500, on account of a bill of exchange drawn by Carson in favor of Alexander, on A. J. Wright & Co., of New Orleans, by whom it was accepted, dated 20th of February, 1853, and due in November, 1853.   The objection is that this bill was not protested, and that it was not shown that demand of payment was made or notice of non-payment given; and, therefore, that Carson was not liable upon it.

Carson *v.* Alexander.

It appears by the pleadings that when this bill was drawn Carson was doing business with Alexander as a commission merchant, shipping his cotton to him, and that Alexander had it sold by Wright & Co., in New Orleans, and received the proceeds, and that this bill was drawn for the purpose of placing Alexander in funds for advances which he had made for Carson. That the draft was negotiated by Alexander, but upon its maturity Carson failed to pay it, and Alexander took it up, and charged it against Carson in an account rendered him, and to which he made no objection.

Under such circumstances, there was no necessity for protest or notice to Carson. The bill was drawn upon Alexander's agent, and it was virtually the same as if drawn on himself, for it was through him that Carson was to furnish the means to pay it. But having failed to furnish the means, Alexander took it up and paid it himself to the holder, to whom it had been negotiated. If Wright & Co., being accommodation acceptors, had paid it on their own account, it is clear that there would have been no necessity for notice or protest ; and Alexander had the right through them, as his agents, to take it up ; and having done so, there was equally no necessity for notice or protest. But no injury could have arisen to Carson for want of notice, because he had failed to furnish the funds to pay the bill. And, moreover, it appears that the account containing a charge for the draft was sent to Carson, and that he made no objection to it.

The next objection applies to the allowance of eight per cent. interest on account of this bill. This, it is said, is erroneous, because the bill was payable in New Orleans, and that the legal rate of interest upon it is five per cent. But it appears that the bill was put in circulation, and was afterwards taken up by Alexander through his agents, the acceptors, and that the money was thus advanced upon the bill. He was, then, entitled to the interest allowed for money advanced, which is eight per cent., according to the course of trade ; and having received his accounts with interest charged at that rate upon money advanced, and without objection, and also received credit for interest at the same rate, he must be presumed to have agreed to pay interest at that rate in his dealings with Alexander.

The last objection insisted upon is, that the bill for $706 is

without consideration, and is erroneously charged against the appellant. Taking the statements of the bill as true, that would be correct. But the bill calls for discovery upon the point, and the answer shows that in the first place the appellant drew a bill for $611 97 upon Alexander, but failed to pay it, and that Alexander had to pay it; and he, therefore, charged it against Carson. He then drew another bill for $706 upon Alexander, which was accepted, and was afterwards negotiated by the appellant, and discounted for the sum of $642 46, which sum was paid to Alexander, but $100 of it was at that time loaned to the appellant, and he received credit for $542 46. When this bill matured, Carson failed to pay it, and Alexander was compelled to pay it. Alexander having thus paid both bills, it is manifest that he was entitled to charge the appellant with them, giving him credit for the sum received from him from the money raised by the discount of the second bill.

This state of facts appears by the answer, which being made upon the call for discovery upon the point in the bill, must be taken as evidence, and, not being disproved, as true.

Considering the exceptions insisted upon as not well taken, the decree overruling them was correct, and is affirmed.